## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
**AUDREY M. ALBERTS,**                              )
                                                    )
        **Plaintiff,**          )
                                                    )
**v.**                                              )   **Civil Action No. 1:10-cv-01727-JEB**
                                                    )
**HON. DAVID J. KAPPOS,**                           )
**Under Secretary of Commerce for**                 )
**Intellectual Property & Director of the**         )
**United States Patent & Trademark Office,**        )
                                                    )
        **Defendant.**          )
_____)

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
### OF HIS MOTION FOR SUMMARY JUDGMENT

The plaintiff's arguments speak little to the ultimate legal issue of obviousness.  It is undisputed that the Complete Interface® Catalog is a prior art commercial marketing publication for Interface® brand carpet tiles.  From the outset, the examiner and the Board consistently rejected Alberts's arguments that the Interface® Excerpt's depiction of carpet tiles to form area rugs is purely artistic and not meant for commercial use.  Alberts now argues that when the Complete Interface® Catalog is viewed as a whole, it also would not have suggested the practical use of carpet tiles to make an area rug in conventional convex shapes, *e.g.,* oval, square, rectangle, circle, to a person of ordinary skill in the art.  Yet Alberts points to nothing in the Complete Interface® Catalog that alters the Board's analysis that it would have been readily obvious to one of ordinary skill in the art to arrange the Interface® brand carpet tiles to form convex area rugs.

**1.  The Director Did Not Rely On Hindsight Knowledge Of Alberts's Alleged Invention**

Alberts complains that the Director[1] improperly cherry picked from the Complete Interface® Catalog by "*looking* for anything that *could* be argued" as an area rug.  Pl. Rep. Mem. at 5.  Alberts further argues that the Director simply reasoned from the hindsight knowledge of her alleged invention; implying that use of carpet tiles to make area rugs was not previously known.  *Id.*[2]  The Director did no such thing.  The record (and common sense) demonstrates that a person of ordinary skill would have created area rugs in conventional convex shapes out of carpet tiles based on the Complete Interface® Catalog's disclosure absent Alberts's alleged insight.

Notably absent in Alberts's arguments is any citation to the Complete Interface® Catalog where it states or even suggests that Interface® brand carpet tiles should not or cannot be used to create conventionally-shaped area rugs.[3]  *See Para-Ordinance v. SGS Importers*, 73 F.3d 1085, 1090 (Fed. Cir. 1994) ("A reference may be said to teach away when a person of ordinary skill,

---

[1]     Alberts incorrectly refers to the Defendant as the "Commissioner."  The title of the head of the USPTO changed from "Commissioner" to "Director" in 1999.  *See Kroll v. Finnerty*, 242 F.3d 1359, 1362 n.1 (Fed. Cir. 2001).

[2]     To elaborate, Alberts seemingly implies that no one prior to her insight ever conceived of the idea to make area rugs using carpet tiles.  As explained in the Director's opening brief, Alberts could have supported her arguments of counsel with an affidavit or declaration explaining why one of ordinary skill reading the Interface® Excerpt would not use the Interface® carpet tiles to make conventionally-shaped area rugs.  Def. Mem. at 18.  In addition, Alberts could have submitted objective evidence of nonobviousness, *i.e.,* commercial success, unexpected results, long felt but unmet need, in the form of an affidavit or a declaration but failed to do so.  *Id.*  Instead, now relying on four pages of Complete Interface® Catalog (instead of 2), Alberts merely presents the same lawyers' arguments she made to the Board.  *See id.* at 21-22.

[3]     For example, Alberts contends that she does not rely on attorney argument alone but then vaguely states that her arguments "are based on the <u>evidence of the other pages</u> of the Complete Interface Catalog—evidence that was not considered by the Board."  Pl. Rep. Mem. at 9 (emphasis added).

upon [examining] the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by applicant.") (internal citations omitted).  To the contrary, as the examiner and Board found, the Catalog depicts carpet tiles arranged on various flooring surfaces in a variety of interchangeable configurations, including area rugs.  A82 (Ex. 1, at 56); A83 (Ex. 1, at 57); A169; A273; A374; A408; A420-21.

The evidence and reasoning that led the Board to a conclusion of obviousness based on the Interface® Excerpt applies equally to the Complete Interface® Catalog.  *See* Def. Mem. at 20-24.  The examiner and the Board explained that one skilled in the art would understand from "the photos and the text of page 2 (i.e., '[t]he options are limited only to your imagination') that the carpet tiles can be employed in any manner desired by the consumer, including the area rug configurations shown on pages 1 and 2 of said Catalog."  A383; *see also* A374 (a skilled artisan would have readily "arrange[d] the carpet tiles of the Interface Catalog to form said conventional, convex-shaped area rugs in order to produce aesthetically pleasing area rugs"); A408 ("the shape of the modular area rug is nothing more than a design choice").  The Catalog's teaching of consumer-driven design choice represents the "reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does."  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007); *id.* at 427 (finding "design step well within the grasp of a person of ordinary skill in the relevant art," not inventive).  The obviousness of Alberts's claimed invention, therefore, lies in the fact that the prior art itself suggests the obvious arrangement.

Alberts also contends that the Board's Decision on Request for Rehearing was the first time the Board "addressed the issue of whether the carpet tiles on the floor in page 2 of the Interface Excerpt were an 'area rug.'"  Pl. Rep. Mem. at 5, n. 2.  This is incorrect.  The Board on

rehearing once again addressed Alberts's old arguments that the Interface® Excerpt was purely artistic and not meant for utilitarian usage and reaffirmed that the depiction and caption on page 2 suggests that "carpet tiles may be of different shapes and sizes, as well as arrangements, either on an area of the floor of the empty space or the entire floor of the empty space." A421. The Board's finding was consistent with the examiner's findings from the outset that the Interface® Excerpt "clearly shows glue-free carpet tiles that are laid on a flooring surface in a variety of interchangeable configurations, including area rugs (i.e., not installed wall-to-wall) (page 2 of Catalog)." A169; *see also* A273; A374; A408. Accordingly, the Board held in its Decision on Rehearing that "we remain of the opinion that the depiction on page 2 of [the Interface® Excerpt] along with the accompanying caption discloses an area rug composed of carpet tiles that are free of adhesive." A420. Alberts also seems to be making a new argument that the Board failed to use the "ordinary meaning" of the phrase "area rug" in its decisions. Pl. Rep. Mem. at 5. But the Board, in fact, used the ordinary meaning of "area rug"—a rug that covers a limited area of floor space, i.e. not wall-to-wall, in a room and Alberts does not offer any alternative definition.

Moreover, rigid preventative rules that deny fact finders recourse to common sense are neither necessary nor consistent with case law. *See KSR*, 550 U.S. at 421-22, citing *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.,* 464 F.3d 1356, 1367 (Fed. Cir. 2006) ("Our suggestion test is in actuality quite flexible and not only permits, but *requires,* consideration of common knowledge and common sense"); *Alza Corp. v. Mylan Labs., Inc.,* 464 F.3d 1286, 1291 (Fed. Cir. 2006) ("There is flexibility in our obviousness jurisprudence because a motivation may be found *implicitly* in the prior art. We do not have a rigid test that requires an

actual teaching to combine. . . .").  Here, it is undisputed that the only arguable difference[4] between Alberts's alleged invention and the Complete Interface® Catalog is that the catalog exemplifies area rugs that are not conventionally shaped area rugs as claimed by Alberts.  *See* A384 ("the obviousness rejection is not based upon hindsight, but rather on the photos and text of the *Catalog* reference and the general knowledge of one skilled in the art that convex-shaped area rugs are conventional shapes for area rugs").   But the shape of the modular area rug is nothing more than a common sense design choice and does not distinguish the claims from the Interface® Catalog.  A408.

In addition to the Catalog's specific suggestion of the alteration needed to arrive at Alberts's alleged invention, recourse to logic, judgment, and common sense available to a person of ordinary skill further leads to the conclusion that Alberts's invention would have been obvious.  *See KSR*, 550 U.S. at 421-22 (clarifying that recourse to "common sense," viewed from the perspective of a person of ordinary skill, may be utilized by the courts in addressing a question of obviousness).  The Board articulated reasons to alter the prior art and additionally explained the common sense inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  As explained in the Director's opening brief, those same reasons and common sense inferences apply to the Complete Interface® Catalog.

Contrary to Alberts's arguments, reliance on the Catalog's express teaching was not inconsistent with the overall purpose of the Catalog.  Pl. Rep. Mem. at 5-6.  First, there is no

---

[4]         Indeed, the examiner noted that there is no practical difference at all because one such convex-shaped area rug is depicted on page 2 of the Interface® Excerpt directly between the two columns and contains 16 modular carpet tiles, arranged four by four, to form a rectangular, *i.e.,* a convex area rug.  *See* A231-32 ("the tiles shown on page 2 of the catalog that only touch a corner of another tile can be considered not part of the claimed modular area rug, but rather merely randomly placed tiles or tiles of a second modular area rug").

denying that the Catalog is a marketing publication selling Interface® brand carpet tiles and in addition to providing technical information on product lines, the catalog contains full page photography containing design ideas expressed in descriptive language and creative copywriting. Ex. 1[5] at 1-15; 55-59.  Yet Alberts attempts to present the Catalog as a purely artistic coffee table book.   In addition, while Alberts seemingly argues that the entire Catalog teaches away from the use of carpet tiles to make area rugs, Alberts overlooks the fact that a reference is good for all that it teaches an ordinary artisan.  *See In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012) ("A reference may be read for all that it teaches, including uses beyond its primary purpose."); *see also Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("Even if a reference discloses an inoperative device, it is prior art for all that it teaches."). Simply because the Catalog discloses the use of carpet tiles for wall-to-wall carpeting does not negate its additional teaching of the use of carpet tiles to form area rugs.

Moreover, the Director did not improperly aggregate disparate pieces of the Catalog through hindsight.  Alberts readily agrees with the examiner's uncontested Official Notice that "area rugs come in a variety of shapes and sizes, including common rectangular or square shapes, oval and round shapes, and runner styles."  *See* Pl. Rep. Mem. at 9-10.  Thus, the Director, like the examiner, identified additional reasons "that would have prompted a person of ordinary skill in the relevant field to combine" the carpet tiles in the way the Alberts's alleged invention does.  *See KSR*, 550 U.S. at 418; *id.* at 417 ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability.").

---

[5]        Pursuant to LCvR7(n), an appendix containing the complete administrative record (A1-A422) and the parties' exhibits will be filed with the Court within ten days following the final memorandum concerning the parties' cross-motions for summary judgment.

### 2. There Is No Dispute As To The *De Novo* Standard Of Review For Newly Presented Evidence

Alberts contends that the Director fails to recognize that the substantial evidence standard of review does not apply because Alberts has submitted the Complete Interface® Catalog as new evidence. Pl. Rep. Mem. at 1-3. To the contrary, the Director stated that when "parties present new evidence on a disputed question of fact, the district court must make a *de novo* finding as to the newly presented evidence together with the evidence before the Board." Def. Mem. at 15 (*citing Kappos v. Hyatt*, 132 S. Ct. 1690, 1700 (2012)). The Director further noted that the sections of the Complete Interface® Catalog that Alberts relies on support the Director, not Alberts. Def. Mem. 21-24. Thus, the Complete Interface® Catalog, like the Interface® Excerpt alone, whether viewed *de novo* or for substantial evidence, would have suggested to one of ordinary skill in the art to create conventionally-shaped area rugs made up of carpet tiles.

### 3. The Director Is Not Required To Make A Second *Prima Facie* Case of Obviousness In This Court

Alberts's suggestion that the USPTO is somehow required to make a second *prima facie* case of unpatentability in this Court (Pl. Rep. Mem. at 6) is incorrect. A *prima facie* case is made during patent examination and is "merely a procedural device that enables an appropriate shift of the burden of production." *In re Jung*, 637 F.3d 1356, 1362 (Fed. Cir. 2011) (internal citations omitted). The USPTO satisfies its initial burden during patent examination by adequately explaining "the shortcomings it perceives so that the applicant is properly notified and able to respond." *Id.* Alberts has not asserted that the USPTO failed to make a *prima facie* case during prosecution, and its argument that the USPTO is required to make a second *prima facie* case here is unsupported by any case law.

Alberts further mistakenly contends that the USPTO's "*opinion* that page 2 of the Interface Excerpt discloses an 'area rug' to one of ordinary skill carries little or no weight"

because the USPTO did not have the benefit of the Complete Interface Catalog.  Pl. Rep. Mem.

at 6 (emphasis in original).  As an initial matter, it was not the USPTO's "opinion" as to what the

Interface® Excerpt would disclose to a person of skill in the art at the time of the invention—it

was a finding of fact.  The Supreme Court has stated that this Court "may, in its discretion,

consider the proceedings before and findings of the Patent Office in deciding what weight to

afford an applicant's newly-admitted evidence." *Kappos,* 132 S. Ct. at 1700.  Here, as the

Director explained in his Opening Brief, nothing in the Complete Interface® Catalog undercuts

this finding of fact made by the USPTO.

### 4.  Interface's Patent Applications Are Not Relevant To This Case

In a new argument that Alberts did not make in its opening brief (and is therefore

waived), Alberts contends that Interface's patent application is "objective evidence in the record

that shows that Interface itself did not perceive [the] carpet tiles" depicted as area rugs in the

Complete Interface® Catalog to be actual area rugs.  Pl. Rep. Mem. at 7; *Jones v. Mukasey,* 565

F. Supp. 2d 68, 81 (D.D.C. 2008) (citations omitted) ("As the D.C. Circuit has consistently held,

the Court should not address arguments raised for the first time in a party's reply.").

Even if this Court were to consider Alberts's argument, it is unpersuasive.  First,

Alberts's selective quotes from the application prove nothing.  Second, Alberts's argument that

Interface did not believe that its Catalog disclosed area rugs is belied by the Declaration of David

Oakey[6], stating that he, an Interface employee, began creating adhesive-free Interface® brand

---

[6]      On June 22, 2012, the USPTO received an e-mail from Interface®'s counsel
stating that it was producing documents "responsive to third party discovery requests served by
Ms. Alberts and subsequently discussed between counsel for Interface and counsel for Ms.
Alberts."  Ex. 3, E-mail from Interface's counsel.  The discovery contained a Declaration of
David Oakey and accompanying exhibits.  Ex. 4.  David Oakey declared that he has been
designing carpet tile products exclusively for Interface, Inc. at his design studio, Pond Studios,
since 1996.  *Id.* at ¶ 6.  David Oakey further declared that exhibits 1-10 attached to his

carpet tiles to make conventional area rugs as early as 1996.  Ex. 4, at ¶ 1-12, and accompanying exhibits 1-10.  Alberts had the opportunity to take a deposition of Interface in this action but chose not to do so.  Third, contrary to Alberts's footnote 3 (which fails to include any citations), Interface's patent applications are not part of the record of this application.  Finally, to the extent Alberts is now arguing that she was the first to have invented the use of carpet tiles to assemble area rugs, the examiner already considered and rejected that argument.  A383 ("[Alberts] erroneously draws biased conclusions about the intended use of the carpet tiles of said *Catalog*. To state that the installation of carpet tiles shown on page 2 of the *Catalog* is a mere artistic configuration not intended for utilitarian usage is prejudicial and self-serving.").  It is axiomatic that an applicant is not entitled to a product patent based upon a new intended use for that old or obvious product.  *See, e.g., In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).  Accordingly, Alberts's argument fails.

_____

declaration are "photographs of rectangular or square area rug installations at Pond Studios between 1996 and September 2002."  *Id.*

Alberts does little to challenge the evidence supporting the conclusion that it would have been readily obvious to one of ordinary skill in the art to arrange the carpet tiles disclosed in the Interface® Catalog to form the claimed conventionally-shaped area rugs.  Accordingly, this Court should grant the USPTO's cross motion for summary judgment and deny Alberts's motion for summary judgment.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar # 447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Acting Chief, Civil Division

BY:       ____/s/_____
FRED E. HAYNES, D.C. Bar # 165654
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 514-7201
fred.haynes@usdoj.gov

Of Counsel:
Farheena Y. Rasheed
Frances M. Lynch

Associate Solicitors
United States Patent and Trademark Office