**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AUDREY M. ALBERTS,

     **Plaintiff,**

       **v.**

HON. DAVID J. KAPPOS,
**Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark
Office,**

     **Defendant.**

Civil Action No. 10-1727 (JEB)

## MEMORANDUM OPINION

Plaintiff Audrey M. Alberts filed a patent application at the U.S. Patent and Trademark Office for the invention of a carpet-tile area rug, but the PTO rejected a number of her claims as obvious. After exhausting the PTO's administrative-appeal process, Plaintiff brought this civil action under 35 U.S.C. § 145, seeking a judgment that she is entitled to a patent on the rejected claims. The parties have now cross-moved for summary judgment on the issue of patentability. Because there is no genuine dispute of material fact with the PTO's prior determination of obviousness, the Court will grant judgment for Defendant.

I.    **Background**

   A.  Plaintiff's Claimed Invention

Plaintiff's invention discloses a "carpet-tile area rug," which is composed of an arrangement of multiple carpet tiles laid adjacent to each other, secured to the floor without

adhesive, such that the carpet tiles collectively form an "area rug" of a convex shape.

Specifically, the Court treats claim 1 of Plaintiff's patent application as representative:

> A modular area rug to cover a floor surface comprising: only a plurality of carpet tiles covering only a portion of the floor surface; wherein no adhesive is used to secure the carpet tiles to the floor surface; and wherein an edge of each carpet tile abuts an edge of at least one adjacent carpet tile such that a perimeter of the modular area rug forms a convex figure.

Defendant's Statement of Undisputed Material Facts (DSUMF), ¶ 12.

Although laypersons should comprehend the majority of claim 1's terms, the term "convex figure" may not be so apparent.  Plaintiff's patent application defined convex as "pertaining to a region for which a straight line segment between any two points of the region is entirely within the region.  In other words, a convex figure is one which does not include any interior angles of greater than 180 degrees."  DSUMF, ¶ 31 (citation omitted).  Most commonly known shapes – *e.g.*, ovals, squares, rectangles, circles, pentagons, and octagons – are convex.  For additional clarity, the Court has provided two illustrations below, which demonstrate the distinction between convex and non-convex shapes.



### B. Prior Art

In its subsequent analysis of obviousness, the Court will be comparing Plaintiff's claimed invention to what is called "prior art."  Prior art may be defined as "knowledge that is available, including what would be obvious from it, at a given time, to a person of ordinary skill in the art."  OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1402 (Fed. Cir. 1997) (citation omitted).

The Court will look first at general carpet-tile prior art and then explain the prior art contained in a specific catalog of Interface-brand carpet tiles.

### 1. *General Carpet-Tile Prior Art*

Plaintiff does not deny that other carpet-tile area rugs existed prior to her claimed invention.  See Pl. Mot. at 3.  Among the prior art, an issued patent disclosed a carpet-tile area rug akin to Plaintiff's claimed invention, but its carpet tiles were glued to a plastic mat, as opposed to being adhesive free.  Id.  Another patent application disclosed a carpet-tile area rug where carpet tiles were secured without adhesive within an outer frame.  Id.  "Free-lay" carpet tiles, additionally, were long sold for the purpose of "wall-to-wall installation where at least the non-border carpet tiles were not attached to the subfloor with adhesives."  Id.  Area rugs, moreover, "come in a variety of shapes and sizes, including common rectangular or square shapes, oval and round shapes, and runner styles."  DSUMF, ¶ 35.

### 2. *Interface-Brand Carpet-Tile Prior Art*

The parties' summary-judgment papers chiefly zero in on a single prior-art reference – an eight-page excerpt from a 150-page "printed marketing publication for Interface brand modular carpet tiles" that Plaintiff disclosed to the PTO during patent prosecution ("Interface Excerpt"). See DSUMF, ¶¶ 14, 63-64; see also Plaintiff's Statement of Undisputed Material Facts (PSUMF), ¶¶ 3, 8.   The Interface Excerpt consists of the front and back covers of the full catalog and six pages featuring full-page photographs of unconventional depictions or arrangements of carpet tiles.  See A82-89 (Interface Excerpt).[1]  Most significantly, one of the photographs displays an arrangement of Interface's carpet tiles laid contiguously on a partial

---

[1] The administrative record (ECF 34) filed with the summary-judgment motions contains pages marked A1-422.

segment of a floor to collectively form a non-convex shape.  This "Interface photo" is

reproduced here.



The caption in the bottom right corner of the photograph reads:

> When you put it down, it picks you up.
> Interface invented glue-free carpet tile,
> then discovered how much fun it was to play with it.
> Transform an empty space into a world all your own.
> Just because a floor isn't round doesn't mean
> The tiles have to be square.
> The options are limited only to your imagination.

Let the game begin.

A83.   The main point of contention between the parties is the interpretation of this Interface

photo.

During patent prosecution, Plaintiff submitted only the eight-page Interface Excerpt to

the PTO, but has since obtained the full-length sales catalog from which the excerpt was

extracted.  See A75, 77, 82-89 (Information Disclosure Statement); Def. Rep., Exh. 1 (Full

Interface Catalog).  The majority of the full catalog conventionally displays Interface's various

carpet-tile product lines and summarizes ordering logistics.  It also, however, contains assorted

full-page photographs that playfully display Interface's carpet tiles in unconventional

configurations.  One of the full-page photographs, for example, exhibits the carpet tiles in an

arrangement akin to a hopscotch board, while another shows the carpet tiles in a configuration

resembling a lane in a bowling alley.  See Full Interface Catalog at ECF pp. 99, 156.  The

contested Interface photo and the hopscotch photo were present in the Interface Excerpt

submitted to the PTO, but other imaginative full-page photographs of carpet-tile arrangements,

such as the bowling-alley photo, only appear in the recently submitted complete Interface

catalog.

C.  Procedural History

On August 20, 2004, Plaintiff filed a patent application at the PTO for a "Carpet Tile

Area Rug," which claimed the benefit of an earlier provisional application filed August 21, 2003.

See Compl., ¶¶ 5, 8; DSUMF, ¶¶ 1-2; PSUMF, ¶ 1.  After more than three years of patent

prosecution, the examiner issued a final rejection of Plaintiff's patent claims.  See A267-77

(Examiner's Second Final Rejection).

Of note, claim 1 of Plaintiff's patent application did not initially contain a "convex-figure" limitation.  During patent prosecution, however, the examiner rejected a previous form of the claim as anticipated by the Interface photo and the hopscotch photo.  See A164, 169 (Examiner's First Final Rejection), 272-73.  In an effort to overcome the rejection, Plaintiff amended claim 1 to add the present convex-figure limitation.  See DSUMF, ¶ 30.  The examiner subsequently withdrew her anticipation rejection, but found that a mere change in shape was an obvious variation upon those photos.  See A272-73.  Aside from the newly added convex-figure limitation, claim 1's wording is, in all relevant aspects, otherwise identical to what the examiner previously rejected as anticipated.  See DSUMF, ¶ 30.

Plaintiff subsequently appealed to the PTO's Board of Patent Appeals and Interferences (BPAI).  See A292 (Plaintiff's Notice of Appeal to BPAI).  There, she argued that the Interface photo merely demonstrated an "artistic configuration[]," rather than suggesting a "utilitarian usage," such as an area rug.  See A297, 309 (Plaintiff's BPAI Appeal Brief).  Plaintiff argued, moreover, that the examiner improperly relied upon hindsight to determine that the Interface photo was an area rug rather than an artistic configuration.  See A310.  The BPAI rejected those arguments and ultimately affirmed rejections of claims 1-6, 11-18, and 23-25 as obvious over prior art.  See A398, 408-09 (BPAI Decision).  Thereafter, the BPAI granted Plaintiff's request for rehearing, but did not alter its decision.  See A419, 421 (BPAI Decision on Rehearing).  Plaintiff then brought the instant civil action pursuant to 35 U.S.C. § 145.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the

substantive outcome of the litigation.  Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S.

at 248.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby,

Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by citing to particular parts of materials in the

record."  Fed. R. Civ. P. 56(c)(1)(A).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Liberty

Lobby, Inc., 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006);

Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).  On a motion for

summary judgment, the Court must "eschew making credibility determinations or weighing the

evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere

unsupported allegations or denials and must be supported by affidavits, declarations, or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The nonmovant is

required to provide evidence that would permit a reasonable jury to find in its favor.  Laningham

v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is

"merely colorable" or "not significantly probative," summary judgment may be granted.  Liberty

Lobby, Inc., 477 U.S. at 249-50.

On obviousness determinations in patent cases, "a district court can properly grant, as a

matter of law, a motion for summary judgment on [patentability] when the factual inquiries into

obviousness present no genuine issue of material facts." <u>Ryko Mfg. Co. v. Nu-Star, Inc.</u>, 950 F.2d 714, 716 (Fed. Cir. 1991). "[T]he mere incantation of fact findings listed in [<u>Graham v. John Deere Co.</u>, 383 U.S. 1 (1966)] cannot establish the impropriety of issuing a summary judgment when there is no material issue of fact requiring a trial to resolve, and the facts of record require a holding of [unpatentability]." <u>Union Carbide Corp. v. Am. Can Co.</u>, 724 F.2d 1567, 1571 (Fed Cir. 1984) (quoting <u>Chore-Time Equip., Inc. v. Cumberland Corp.</u>, 713 F.2d 774, 778-79 (Fed Cir 1983)). Therefore, "it is incumbent on the trial judge to look beyond mere denials or arguments with respect to [the factual inquiries underlying obviousness determinations]. On the other hand, the court must resolve all doubt respecting the presence or absence of factual issues in favor of the one against whom summary judgment is sought." <u>Id.</u>

## III.   Analysis

Section 145 of the Patent Act states:

> An applicant dissatisfied with the decision of [the BPAI] may . . . have remedy by civil action against the [PTO] Director in the United States District Court for the District of Columbia . . . .[2] The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the [BPAI], as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent . . . .

35 U.S.C. § 145 (2010). An appeal from the PTO's BPAI to a district court under § 145 is a unique "'hybrid of an appeal and a trial *de novo*.'" <u>Hitachi Koki Co. v. Dudas</u>, 556 F. Supp. 2d 41, 46 (D.D.C. 2008) (emphasis deleted) (quoting <u>Winner Int'l Royalty Corp. v. Wang</u>, 202 F.3d 1340, 1345 (Fed. Cir. 2000)). The Court makes a "*de novo* determination" on the ultimate legal question of patentability. <u>Newmann v. Quigg</u>, 877 F.2d 1575, 1579 (Fed. Cir. 1989); <u>see also</u>

---

[2] On the filing date of this case, § 145 named the U.S. District Court for the District of Columbia as the venue for such civil actions. Due to the 2011 passage of the America Invents Act, the current version of the statute now places venue in the Eastern District of Virginia. <u>See</u> Leahy-Smith America Invents Act, Pub. L. No. 112-29, sec. 9, 125 Stat. 284, 316 (2011).

Burlington Indus., Inc. v. Quigg, 822 F.2d 1581, 1584 (Fed. Cir. 1987) ("Determinations not in accordance with law must be reversed . . . ."). A disappointed applicant is, additionally, "free to introduce new evidence . . . subject only to the . . . Federal Rules of Evidence and the Federal Rules of Civil Procedure." Kappos v. Hyatt, 132 S. Ct. 1690, 1700 (2012) (citation omitted). Where such new evidence is presented, the Court must make "a *de novo* finding [that] take[s] such evidence into account together with the evidence before the board." Id. (citation omitted). If the parties do not submit new evidence during a § 145 proceeding, "the reviewing court must [instead] apply the APA's substantial evidence standard to Patent Office fact findings." Hyatt v. Kappos, 625 F.3d 1320, 1336 (Fed. Cir. 2010) (*en banc*), aff'd, 132 S. Ct. 1690 (2012). Even when weighing new evidence, however, the Court may still consider at its discretion "the proceedings before and findings of the [PTO] in deciding what weight to afford . . . [the] newly-admitted evidence." Kappos, 132 S. Ct. at 1700 (citation omitted).

The Court will start by explaining some of the patent law relevant to the dispute and then address Plaintiff's challenges to the BPAI's decision.

A. Applicable Law

1. *Statutory Requirements of Patentability*

Among the statutory requirements of patentability, 35 U.S.C. § 102 requires a patent to be novel, and § 103 requires it to be non-obvious. The test for novelty looks at whether a single prior-art reference "disclose[s] each and every limitation of [a] claim." Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342, 1347 (Fed. Cir. 1999). If this is the case, the reference is said to "anticipate" the claim. Id.; see also Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000). Such anticipation renders a claim unpatentable.

Even if a particular claim is not anticipated, it must overcome the additional hurdle of §

103's non-obvious requirement.  Under § 103(a),

> [a] patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

While the novelty/anticipation inquiry compares a patent claim to just one prior-art reference at a

time, the test for obviousness accounts for all analogous prior art that existed just before the date

of the patent applicant's invention.  See Cohesive Techs., Inc. v. Waters Corp., 543 F.3d 1351,

1364 (Fed. Cir. 2008) ("Obviousness can be proven by combining existing prior art references,

while anticipation requires all elements of a claim to be disclosed within a single reference.").  In

this case, the BPAI relied on obviousness, not anticipation.  A400, 407-09.  That is where the

battle is waged here.

The ultimate determination of obviousness "is a question of law based on underlying

factual determinations."  Rockwell Int'l Corp. v. United States, 147 F.3d 1358, 1362 (Fed. Cir.

1998); see also Burlington Indus., 822 F.2d at 1584.  The "underlying [factual] determinations

include (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the

differences between the claimed invention and the prior art; and (4) the extent of any proffered

objective indicia of nonobviousness [i.e., secondary considerations]."  Rockwell Int'l, 147 F.3d

at 1362 (citing Graham, 383 U.S. at 17-18).  In undertaking this inquiry into the four "Graham

factors," courts must consider all evidence and "step backward in time and into the shoes worn

by [the person having ordinary skill in the art before the claimed invention] was made . . . [to]

determine whether the . . . claimed invention as a whole would have been obvious at that time to

that person."  Panduit Corp. v. Dennison Mfg., Co., 810 F.2d 1561, 1566 (Fed. Cir. 1987)

(emphasis in original).  Hindsight, therefore, may not enter into the Court's obviousness

determination.  See, e.g., KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 421 (2007) ("A factfinder

should be aware . . . of the distortion caused by hindsight bias and must be cautious of

arguments reliant upon *ex post* reasoning."); Graham, 383 U.S. at 36 (cautioning that courts must

not "'slip[] into use of hindsight'"); In re Fritch, 972 F.2d 1260, 1266 (Fed. Cir. 1992) ("It is

impermissible to use the claimed invention as an instruction manual or 'template' to piece

together the teachings of the prior art so that the claimed invention is rendered obvious.").

The Supreme Court has cautioned that obviousness determinations should not be

controlled by "[r]igid preventative rules that deny factfinders recourse to common sense." KSR,

550 U.S. at 421.  Therefore, "[i]n determining whether the subject matter of a patent claim is

obvious, neither the particular motivation nor the avowed purpose of the patentee controls.  What

matters is the objective reach of the claim.  If the claim extends to what is obvious, it is invalid

under § 103." Id. at 419.  In addition, "[t]he combination of familiar elements according to

known methods is likely to be obvious when it does no more than yield predictable results." Id.

at 416.

## 2.  *Patent-Prosecution Burden of Proof*

In patent prosecutions, a burden-shifting procedure occurs between the examiner and the

applicant, which is "merely a procedural device that enables an appropriate shift of the burden of

production." In re Jung, 637 F.3d 1356, 1362 (Fed. Cir. 2011) (citation omitted).  The

examiner carries the initial burden of establishing a *prima facie* case of unpatentability "by

adequately explain[ing] the shortcomings it perceives so that the applicant is properly notified

and able to respond." Id.  The statement of the *prima facie* case, however, "need not be a full

exposition on every conceivable deficiency of a claim . . . .  Rather, its purpose is simply to

provide sufficient notice to the applicant to facilitate his effective submission of information."

Hyatt v. Dudas, 492 F.3d 1365, 1370 (Fed. Cir. 2007).  Thereafter, "the burden shifts to the

applicant to rebut the *prima facie* case with evidence and/or argument."  Id.  Finally,

"[p]atentability *vel non* is then determined on the entirety of the record, by a preponderance of

evidence and weight of argument."  In re Glaug, 283 F.3d 1335, 1338 (Fed. Cir. 2002).

      B.  Plaintiff's Challenges

          1.  Prima Facie *Case*

As a threshold matter, Plaintiff selectively quotes language outlining patent prosecution's

burden-shifting framework from In re Glaug, 283 F.3d at 1338, to argue that Defendant must

again make out a *prima facie* case of obviousness in the instant civil action because of the newly

submitted full Interface catalog.  See Pl. Opp./Rep. at 6.  She asserts that she is "entitled to a

patent" because Defendant purportedly did not make a sufficient "*prima facie* showing of

obviousness."  Id.  Defendant counters that the *prima facie* requirement cited by Plaintiff is

"'merely a procedural device that enables an appropriate shift of the burden of production'"

during patent prosecution, and that Plaintiff's "argument that the USPTO is required to make a

second *prima facie* case [before this Court] is unsupported by any case law."  Def. Rep. at 7.

Defendant has the better of this argument.

Plaintiff appears to urge the Court to improperly allow the meaning of "*prima facie* case"

in the context of ordinary litigation to supplant its meaning in patent prosecution.  See In re

Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation, 676 F.3d 1063,

1080 n.7 (Fed. Cir. 2012) (stressing that "prosecution and litigation contexts are distinct").  The

Federal Circuit has emphasized, moreover, that an "applicant does not start over to prosecute his

application before the district court [in § 145 proceedings] unfettered by what happened in the

PTO." Fregeau v. Mossinghoff, 776 F.2d 1034, 1038 (Fed. Cir. 1985); see also Kappos, 132 S.

Ct. at 1700 ("[T]he district court may . . . 'consider the proceedings before and findings of the

Patent Office . . . . '") (quoting Hyatt, 625 F.3d at 1335).

The examiner succinctly explained why Plaintiff's claims were obvious in light of the

Interface Excerpt, thereby satisfying her initial *prima facie* burden of providing sufficient notice

to Plaintiff during the patent application's prosecution. See A272-73. The PTO, consequently,

did not fail to meet its *prima facie* burden at that stage. Even if Defendant might have borne the

burden to do so again in the instant § 145 proceeding – which the Court does not believe to be

the case – Defendant has met it by presenting argument that the newly submitted full Interface

catalog dictates no different result.

        2. *Obviousness*

Before moving to the thrust of Plaintiff's substantive argument, there is one last

procedural matter to address. The BPAI treated claim 1 of Plaintiff's patent application as

representative of all rejected claims pursuant to 37 C.F.R. § 41.37(c)(1)(vii) (2011).[3] See A407.

Plaintiff here does not present precise claim-by-claim arguments in her summary-judgment

papers, has not argued that the BPAI erred in its treatment of claim 1 as representative, and has

not opposed Defendant's position of doing so in the instant § 145 proceeding. The Court,

accordingly, also will treat claim 1 as representative of all rejected claims.

Turning finally to the merits of Plaintiff's case, the Court observes that she challenges

essentially only the first of Graham's obviousness factors: the scope and content of the prior art.

While the Court will address that factor first, it will also analyze the remaining Graham factors.

See Kinetic Concepts, Inc. v. Smith & Nephew, Inc., 688 F.3d 1342, 1360 (Fed. Cir. 2012)

---

[3] Due to an amendment of the Code of Federal Regulations, the provision allowing the BPAI to consider an individual claim as representative of all claims is now found at § 41.37(c)(iv) (2012).

("[T]he obviousness inquiry requires examination of all four <u>Graham</u> factors.") (citation omitted).

### a.   Scope and Content of the Prior Art

"The 'scope' of the prior art determines what references fall within the relevant prior art that can be applied to reject a claim [as obvious].  The 'content' of the prior art is what those references teach a person of ordinary skill in the art."  <u>Joy Techs., Inc. v. Quigg</u>, 732 F. Supp. 227, 232-33 (D.D.C. 1990).  The Court looks at the scope and content separately.

### i.   Scope

A prior-art reference only falls within the scope of the prior art if it is "analogous."  The gravamen of Plaintiff's argument seems to be that the Interface photo is not analogous art.  The Court is unconvinced.

In determining whether prior art is analogous, the Federal Circuit has adopted a "two-fold" test.  <u>Union Carbide</u>, 724 F.2d at 1572.  Under the first prong, prior art that "is from the same field of endeavor, regardless of the problem addressed," is analogous.  <u>Innovention Toys, LLC v. MGA Entm't, Inc.</u>, 637 F.3d 1314, 1321 (Fed. Cir. 2011) (citation omitted).  Even if not within the same field of endeavor, however, the second prong still deems prior art analogous if it is "reasonably pertinent to the particular problem with which the inventor is involved."  <u>Id.</u>  "A reference is reasonably pertinent if . . . it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem."  <u>Id.</u> (citation omitted).

In addressing the first prong – that is, whether the prior art is from the same field of endeavor – Plaintiff insists that a person of ordinary skill in the art viewing the Interface photo within the context of the full Interface catalog would only perceive an artistic arrangement, not

an area rug.  See Pl. Mot. at 10-12; Pl. Opp./Rep. at 3-5.  She explains that the photograph was located within a grouping of artistic "introductory" marketing photographs, while the catalog's other pages mostly disclose carpet tiles laid wall to wall in "'practical' office configurations." Pl. Mot. at 10-11.  Plaintiff asserts that a potential area rug is only now recognizable in the disputed photo with the benefit of hindsight.  See id. at 12; Pl. Opp./Rep. at 4-5.

If the Interface photo merely demonstrates an artistic configuration, but not an area rug, it is not within the same field of endeavor.  Yet anyone looking at the photo can observe that it displays a grouping of carpet tiles on only a portion of the floor, suggesting a type of area rug.  In fact, as the BPAI pointed out, "Appellant's contention that the modular area rug depicted [in the Interface photo] is an 'artistic configuration' that is 'not presented as suggestions for utilitarian usage' is belied by the accompanying caption, which plainly suggests that the carpet tiles may be arranged as desired."  A408.  Plaintiff's newly submitted evidence demonstrating additional creative photographs in the complete catalog does nothing to alter this common-sense inference.

Nor is there a hindsight problem.  Merely looking between the pillars in the Interface photo plainly reveals an area rug.  Again, the BPAI correctly observed: "[W]e agree with the Examiner, that the shape of the modular area rug is nothing more than a design choice, and does not patentably distinguish the claims from Interface . . . .  [W]e agree with the Examiner that it would have been obvious to form the modular area rugs in Interface in convex shapes."  A408.

Even were the first prong not met, the second would be, particularly given the latitude the Federal Circuit has permitted.  Because "'familiar items may have obvious uses beyond their primary purposes,'" the Court must construe the scope of analogous art broadly.  Wyers v. Master Lock Co., 616 F.3d 1231, 1238 (Fed. Cir. 2010) (quoting KSR, 550 U.S. at 420). Seemingly dissimilar prior art, therefore, is often analogous under the second prong of the

analogous-art test.  See In re ICON Health & Fitness, Inc., 496 F.3d 1374, 1379-80 (Fed. Cir. 2007) (folding bed was analogous to claimed treadmill invention for its disclosure of folding mechanism); In re Paulsen, 30 F.3d 1475, 1481 (Fed. Cir. 1994) (cabinets and piano lid were analogous art to portable computer's claimed "clamshell style" opening mechanism); Innovention Toys, 637 F.3d at 1321-23 (computer-based chess game was analogous art to claimed physical board game); Wyers, 616 F.3d at 1238 (Fed. Cir. 2010) (padlocks were analogous art to claimed trailer-hitch locking mechanism).

Employing this standard, even if the Court were to believe that the Interface photo does not demonstrate an area rug, the photograph would still be reasonably pertinent to the problem Plaintiff's claimed invention addresses.  Plaintiff's invention attempts to solve the problem of creating an area rug with adhesive-free carpet tiles.  Whether a person of ordinary skill in the art would perceive Interface's carpet-tile arrangement as an art piece or an area rug is immaterial. Because the Interface photo exhibits a grouping of adhesive-free carpet tiles laid across only a portion of the floor, a person of ordinary skill in the art would undoubtedly look to it in determining how to form an adhesive-free area rug.

Plaintiff also argues for the first time in her Reply that Interface itself did not recognize an area rug in the photograph based upon statements in a patent application Interface designers filed three years after the full catalog was published.  See Pl. Opp./Rep. at 7-8.  Although she has effectively forfeited this argument, the Court also finds it immaterial.  The argument – even if taken as true – does not alter the Court's finding that a person having ordinary skill in the art would find the photograph reasonably pertinent to the problem addressed by the invention. There is, accordingly, no genuine dispute of material fact that the Interface photo is analogous art.

ii.   Content

Although the prior art may be analogous, the Court must also determine what it teaches to a person of ordinary skill in the art.  Prior art is "relevant for all it contains, including what it fairly suggests to one of ordinary skill in the art."  Markman v. Lehman, 987 F. Supp. 25, 32 (D.D.C. 1997).  The parties do not dispute that area rugs commonly come in conventional convex shapes and that convex-shaped area rugs are analogous art.  The parties do disagree, however, on whether the Interface photo displays adhesive-free carpet tiles.  The Court ultimately finds that there is no genuine dispute of material fact that the photograph does so.

In arguing that the carpet tiles in the disputed photograph use adhesive, Plaintiff names three Interface carpet-tile lines that do so and singles out just nine pages from the full Interface catalog that she believes demonstrate carpet tiles secured to a surface (usually a wall) with adhesive.  Pl Mot. at 12; Pl. Opp./Rep. at 11.  Plaintiff thus surmises that because these selected pages from the full Interface catalog might demonstrate carpet tiles mounted to objects such as walls with adhesive, the carpet tiles in the Interface carpet-tile photograph might also have been secured to the floor with adhesive.  See Pl. Mot. at 12; Pl. Opp./Rep. at 11-12.

Yet, an Interface sales brochure titled "Why Buy a Modular Carpet System That Has to Be Stuck to the Floor with Glue?" helps demonstrate that adhesive-free carpet tiles were an integral component of Interface's product lines.  See DSUMF, ¶¶ 22-24, 27.  More significantly, a caption located directly on the disputed Interface photo informs readers that "Interface invented glue-free carpet tile, then discovered how much fun it was to play with it.  Transform an empty space into a world all your own."  In other words, the caption itself belies any notion that adhesive was used.  Aside from the disputed photograph, Plaintiff does not provide a single example of any carpet tiles in the catalog she believes to be mounted on a floor with adhesive.

Her reliance on the nine pages with wall-mounted tile fails to genuinely dispute the unambiguous caption disclosing that the carpet tiles arranged over the floor in the Interface photo were among its "glue-free" carpet tiles.  There is, as a result, no genuine dispute of material fact that the carpet tiles in the Interface photo are adhesive free.  As such, the content of the Interface photo teaches this characteristic to one of ordinary skill in the art.

> b.   Level of Ordinary Skill in the Art

The parties do not appear to disagree over the level of ordinary skill in the art, and they have not presented any evidence or argument on the issue.  The Court, nonetheless, addresses this factor so that it can conduct a full obviousness analysis.  See, e.g., Kinetic Concepts, 688 F.3d at 1360 (obviousness inquiry requires examination of all four Graham factors) (citation omitted).

"Obviousness is determined from the vantage point of a hypothetical person having ordinary skill in the art to which the patent pertains.  This legal construct is akin to the 'reasonable person' used as a reference in negligence determinations."  In re Rouffet, 149 F.3d 1350, 1357 (Fed. Cir. 1998) (internal citation omitted).  "A less sophisticated level of skill generally favors a determination of nonobviousness, and thus the [patent applicant], while a higher level of skill favors the reverse."  Innovention Toys, 637 F.3d at 1323.  If "the subject matter of the patent and the prior art [are] . . . easily understandable, a factual determination of the level of skill in the art [may be] unnecessary."  Chore-Time, 713 F.2d at 779.  A court should not, however, automatically set the level of ordinary skill to the lowest level by default just because a party fails to present evidence on it.  See Innovention Toys, 637 F.3d at 1323-24 (district court erred in setting level of ordinary skill to that of a layperson even though party challenging patent's validity failed to present evidence on it).

While understanding Plaintiff's invention does not necessitate a particularly high level of ordinary skill in the art, setting the level at that of a true layperson would be too low.  A person having ordinary skill in the art of Plaintiff's invention, therefore, would be an area-rug designer with experience in interior design.  Notwithstanding this factual finding, the Court believes that setting the level of ordinary skill at a considerably lower level – perhaps even at a layperson level – would not alter its ultimate determination that Plaintiff's claimed invention is obvious.

c.   Differences Between Claimed Invention and Prior Art

The parties do not meaningfully address prior art other than the Interface prior-art reference.  Because that reference is sufficient to make a finding of obviousness, the Court need not venture further.  Claim 1's first element denotes "a plurality of carpet tiles covering only a portion of the floor surface."  The parties do not dispute that the Interface photo embodies this element.  The second element calls for "no adhesive . . .  to secure the carpet tiles to the floor surface."  As discussed in Section III.B.2.a.ii, *supra*, there is no genuine dispute of material fact that the Interface photo also contains this element.  The third element requires "an edge of each carpet tile [t]o abut[] an edge of at least one adjacent carpet tile."  Plaintiff does not dispute that the Interface photo possesses this characteristic.  Claim 1's fourth element requires that "a perimeter of the modular area rug forms a convex figure."  Although the carpet tiles in the photo do not form a convex figure, Plaintiff does not dispute the examiner's taking official notice that "area rugs come in a variety of shapes and sizes, including common rectangular or square shapes, oval and round shapes, and runner styles."  A273.

d.  Secondary Considerations

The Court acknowledges that it cannot disregard evidence, should it exist, of pertinent secondary considerations such as "commercial success, long felt but unsolved needs, failure of

others, etc." <u>Geo M. Martin Co. v. Alliance Machine Sys.</u>, 618 F.3d 1294, 1300 (Fed. Cir. 2010)

(citation omitted); <u>Stratoflex, Inc. v. Aeroquip Corp.</u>, 713 F.2d 1530, 1538 (Fed. Cir. 1983)

("[E]vidence [of] . . . secondary considerations . . . must always when present be considered en

route to a determination of obviousness.") (internal quotation marks and citation omitted).

Plaintiff, however, has not submitted any evidence or argument pertaining to secondary

considerations.  The Court, consequently, does not speculate if any secondary considerations

exist.

> e.  Plaintiff's Teaching-Away Argument

Plaintiff dedicates just three sentences in her opening brief to what appears to be a

"teaching-away" argument.  She argues that the statement "just because a floor isn't round

doesn't mean the tiles have to be square" in the Interface photo's caption "directs away" from

perceiving an area rug in the photograph.  <u>See</u> Pl. Mot. at 12.  More precisely, she elaborates that

"[i]f the carpet tiles in the photograph weren't square (e.g., round, oval, etc.) it is hard to

imag[ine] how they could be formed into any meaningful contiguous shape that might conjure up

the concept of an area rug."  <u>Id.</u>

Plaintiff's teaching-away argument lacks force.  A prior-art reference teaches away

"when a person of ordinary skill, upon reading the reference, would be discouraged from

following the path set out in the reference, or would be led in a direction divergent from the path

that was taken by the applicant."  <u>In re Gurley</u>, 27 F.3d 551, 553 (Fed. Cir. 1994).  As noted by

the BPAI, the caption does not teach away from Plaintiff's claimed invention, but instead

suggests to one of ordinary skill in the art that "carpet tiles may be of different shapes and sizes,

as well as arrangements, either on an area of the floor . . . or the entire floor."  A421.  The

caption might, for example, inspire a person of ordinary skill in the art to form a rectangular

carpet-tile area rug by laying equivalent right-triangle-shaped carpet tiles against each other on a

floor.  As the photograph's caption stresses, any additional variations "are only limited to your

imagination."  Since the caption does not discourage a person of ordinary skill in the art from

forming convex-shaped carpet-tile area rugs, Plaintiff's teaching-away argument fails.

> f.   Ultimate Determination of Obviousness

Having determined that, even in light of Plaintiff's newly submitted evidence, the only

difference between the Interface photo and Plaintiff's claimed invention is its shape, the Court

agrees with the BPAI's legal conclusion that such a variation is obvious under § 103.  A legal

conclusion of obviousness "requires more than a mere showing that the prior art includes

separate references covering each separate limitation in a claim under examination.  Rather,

obviousness requires the additional showing that a person of ordinary skill at the time of the

invention would have selected and combined those prior art elements in the normal course of

research and development to yield the claimed invention."  Unigene Labs., Inc. v. Apotex, Inc.,

655 F.3d 1352, 1360 (Fed. Cir. 2011) (internal citation omitted).  Given the Court's factual

findings on the Graham factors here, this standard has been met.

While the Court need not make an explicit finding that the prior art "teaches, suggests, or

motivates" a person of ordinary skill in the art, see KSR, 550 U.S. at 415, existence of such

evidence further strengthens a determination in favor of obviousness.  See Kinetic Concepts, 688

F.3d at 1360 ("[A]n analysis of any teaching, suggestion, or motivation to combine elements

from different prior art references is [still] useful in an obviousness analysis.").  The caption

appended to the Interface photo encourages the reader to "[t]ransform an empty space into a

world all your own . . . . The options are limited only to your imagination."  This language would

motivate a person of ordinary skill in the art to create carpet-tile arrangements that vary from the

photograph, including the intuitive variation of arranging carpet tiles to form a convex figure.

The Court agrees with the BPAI's reasoning that "the shape of [a] modular area rug is nothing

more than a design choice," and convex-shaped area rugs have long existed in the art.  See A408.

The Interface photo itself, moreover, could arguably tip off a person of ordinary skill in the art to

this design choice: "[O]ne such convex-shaped area rug is [arguably] depicted [in the

photograph] directly between the two columns and contains 16 modular carpet tiles, arranged

four by four, to form a . . . convex area rug," whereas the other surrounding carpet tiles are

"merely randomly placed tiles or tiles of a second modular area rug."  Def. Rep. at 5 n.4.

Because it would be obvious to a person of ordinary skill in the art to do no more than change the

shape of the carpet-tile arrangement displayed in the Interface photo, Plaintiff's patent does not

satisfy § 103's patentability requirement of non-obviousness.  Summary judgment in favor of

Defendant, therefore, is appropriate.

## IV.     Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Summary Judgment

and grant Defendant's Cross-Motion for Summary Judgment.  A separate Order consistent with

this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge


Date:  January 18, 2013